Our next case is also Axonics v. Medtronic, 2022, 1532 and 1533. Mr. Nathan. Thank you, Your Honor. May it please the Court. This Court's decisions in Apple and Erickson have drawn a clear line showing where the Board has in the past erred by refusing to consider the content of a reply submitted by the petitioner in an instituted IPR. Apple and Erickson make it clear that when post-institution, a new claim construction is proposed by the petitioner, by the patent owner, the petitioner has the right to respond substantively. And per Apple, you can't do everything. You can't replace your references from the instituted petition with other references that were not in the petition, and you can't even switch embodiments from the references that are the basis of the grounds on which the petition was instituted. You can't do that either. But what you can do is you can oppose that construction substantively, and you can respond to the construction to show that even under that construction, if adopted, the evidence from the prior art references that are the basis of the grounds will meet the limitations nonetheless. You can do that through argument in reply, and you can support that with an expert declaration in reply. This is all we've done here. We didn't submit new references. We didn't switch embodiments. We did exactly what happened in Apple, and it was error for the Board to refuse to hear us. Now in Apple, on facts that are remarkably similar to ours, there was a petition that relied entirely on one example of an algorithm in the prior art specification, and it was argued after institution that that example didn't meet one of the claim terms for a very specific reason that effectively was argued to narrow the claim scope versus what was represented in the petition versus the basis of institution. Now subsequent to institution, when this argument was made, in response to this attempt to narrow claim scope, the petitioner switched examples of the same algorithm to a different example in the prior art of that same algorithm and said, well, this one meets the narrowed construction of these claims if that's indeed adopted. The Board refused to hear it. This court said that was not acceptable. This court said that when there's a new construction post-institution, when there's a narrowing of claim scope, when there's a new issue like that that arises post-institution, the petitioner is allowed to do exactly what Apple had done and was sent back for that reason. Now we did exactly what happened in Apple. In Apple, you had opposing of the construction as such, but you also had substantive argument in the reply, and you had a reply declaration from the expert. We had those same things here. We said this post-institution construction, and I want to be clear, before institution in our case, our petition said no construction necessary, period. Full stop across the board. The patent owner agreed with that and in fact premised its preliminary opposition on that exact same basis, saying that the two limitations at issue here would not be met for exactly the same reason. If one wasn't met, the other wasn't either. Then the Board saw that, agreed there was no construction necessary, saw that we were relying exclusively on the same signal to meet both limitations for each one of our grounds, for each one of the claims on appeal, and instituted on that factual basis. That became the scope of the IPR. Then after that, after institution, Medtronic argued that you needed two different things to meet these two different limitations. We said in reply, that's wrong, you don't. We also said in reply substantively, even if so, we had the one thing, the one signal already in our references, those same references, those same embodiments from those same references, we said here's another one, we can meet both limitations, if you construe it their way. And we submitted an expert declaration. Those exact same three things happened in Apple and this Court said it was error not to allow that. Now, Medtronic's principal attempt to distinguish Apple is to argue that we, per the Board's language, effectively changed grounds. That's not true. The Apple Court specifically explained that Apple did not change ground and a ground is a term of art in IPR practice, as the Court knows, did not change ground in Apple and that's because in Apple, in the reply, in the reply declaration, the same references were being argued to render unpatentable the same claims, same grounds, legally. That's exactly what we've got here. So, any attempt to suggest that the Board's assertion that we effectively changed grounds is in any way proper, is legal error, is squarely in the teeth of Apple. Now, speaking to Erickson, which the Apple Court also relied upon,  a petition that addressed one set of evidence from the prior art and said it meets the claims under one understanding of a term that relates to interleaving. The petition is instituted. You have an instituted IPR. A new, narrower construction is adopted and the petitioner submits additional evidence, additional argument, in support of meeting that new construction, that narrower construction, with the same references. I haven't heard you use the terms abusive discretion yet. Thank you, Your Honor. We start on any appeal, don't we? It is abusive discretion to, one, refuse to consider evidence based on a legal principle that this Court has held is not the law. In other words, legal error is never consistent with non-abused exercise of discretion. And this is a strong APA right that the Courts have recognized, that when there's a new claim construction submitted after the instituted IPR, the petitioner has the right to address whether the references in that IPR and the embodiments upon which the petition relied meet that new construction. So it is abusive discretion because it is legal error, and there is no consideration anywhere in the final written decision, and there's nothing in the record to suggest that we could possibly be outside of the facts of the holding of Apple that endorses and protects that right. Your Honor, if I may speak briefly to the Erickson decision, in that case, again, after institution, there's a new claim construction, new evidence and argument are submitted, and specifically the argument that was submitted that was new was that one of the combining references that had at first been asserted to simply disclose the limitation rather effectively rendered that limitation obvious because of the insubstantial difference between the express disclosure and what the claims were now being construed to require. That's a substantive obviousness argument that's not in the petition, and in Erickson, that was allowed. It was considered to be error for the Board to have rejected that reply in substance. Now, Apple and Erickson, and I'll say this also about Erickson, Erickson focuses on the fact that when the significance of the claim construction becomes apparent post-institution, you do not parse too finely the contents of that petition, vis-a-vis did you say this exact thing, did you say that exact thing. There's a newly significant claim construction post-institution. The petitioner has the right to tell the Board why the references and the embodiments in those references that are the basis of the instituted grounds will meet that construction. Apple holds it. Erickson holds it. It's all we did. We're within those holdings, and it was error for the Board not to allow that, and it was certainly abuse of discretion for that reason. Now, the primary cases upon which Medtronic relies, the primary cases, are Ariosa and Intelligent Biosystems. Neither of these can possibly hold our facts. In Ariosa, there was a complete switching of embodiments in one of the two combining references. That's not allowed. It is not what we did. No one has suggested it is what we did. We are not within the holding of Ariosa. It does not defend the Board's decision. Likewise, Intelligent Biosystems, entire new references, entire new prior art references were added in reply. We did no such thing here. Intelligent Biosystems did not control. What we did is we submitted new argument and evidence on the same embodiments in the same references that were the grounds of our instituted petition, and we were not allowed to do that. That was error. If I may, I'd like to reserve the balance of my time. We will do that for you. Mr. Mody. Good morning, Your Honors. May it please the Court. Exonix made it deliberate. So, Mr. Mody, I'm a little puzzled about what's going on here because in your preliminary response in the two IPRs, you didn't raise this claim construction issue. That was raised for the first time in the response. And when you did raise it in the response, you argued at some length, for example, with respect to the Shulman reference, that under your construction there was non-obviousness. So you've got this new claim construction for the first time in the response. You've got an argument that under the claim construction it's non-obvious. And you're saying that the other side, the petitioner, doesn't get to respond to this new argument? Why is that fair? Sure, Your Honor. Let me address that. And I think the issue here... It's my statement of what happened, accurate. So, Your Honor, I think it's mostly accurate. The only thing that I would want to look at is sort of with respect to Shulman, the arguments that we did make, right, in our primary response. I can read it to you. You were explicit and argued that under your new construction that it was non-obvious because it only had a single input. And, Your Honor, certainly we can... Right, so I agree with you. And I thought you were perhaps referring to the arguments we made in our third reply with respect to Shulman. Why, even under the two... I'm talking about the response. You've seen nothing about this in the preliminary response. And then in the response for the first time, you come up with this new claim construction argument and you argue that under that construction that there's non-obviousness because there's only a single input in Shulman. Why is that fair that they can't respond to... So, let me explain, Your Honor, why. And I think if we can start with Appendix 301, which is their petition, as this Court has held, that the petition does guide the life of a trial. So if we can start with Appendix 301, because I think what happened here is that Exonix made a deliberate choice of ignoring the plain language of the claims. So if you look at Appendix 301, there's a table there. Let me know just right when you're there. Well, go ahead. And so in that table, this is what they argued with respect to the key limitations that we're talking about. They said, it is thus clear that the second variant clause simply narrows the value of the first variant clause to measure current and does not require a separate measurement. They meant, as far as saying, this is consistent... If it was so obvious that their claim construction was wrong, how come you didn't raise it in the preliminary response? So I'll respond to that, and I'll actually give you the answer right now, Your Honor. On that, as Your Honor knows, we're not required to even file a preliminary response. Of course, but you did, and you didn't raise it, which sort of has some bearing on how obvious it was. If it was so obvious, why didn't you raise it in the preliminary response? So the reason is, again, Your Honor, as when we... the preliminary response is optional, and you can make, in our minds, the arguments we've made in the preliminary response we thought were enough to overcome the... If it was so obvious... Try to answer this question. If it was so obvious, why wasn't it in the preliminary response? Your Honor, again, I think if you look at the record, from a... when we are filing preliminary responses in each of these cases, you look at the best arguments you make in terms of quickly getting the denial, right? So in that instance, because they had done such a bad job... So maybe the argument wasn't so obvious. So, Your Honor, I would say it is... it was obvious, at least from the claim construction perspective, because they said... I think the issue here, Judge Dike, is I totally understand what you're saying, but I think you have to look at the record here, right? What they said... Very carefully, and it seems to me you've made arguments for the first time, and then you're saying they can't respond to them. And the reason here, again, Judge Dike, is if you look at the petition, they went as far as saying in their petition that this is consistent, their one-input construction is consistent with the specification, which does not describe two separate measurements. That's what they told the Board and us in their petition. And what happened in their reply? And again, I would like you to look at this. This is at Appendix 815. They said, Petitioner does not dispute there are embodiments where power output would vary based on two different values associated with the current passing through the internal power. So they completely changed their position on reply on claim construction. They completely changed your position. Your Honor, I would say we did not change our position. We did not make a position on claim construction in the preliminary response. You assumed their claim construction and argued under their claim construction for non-obvious. And certainly, Your Honor, we're entitled to do that in a preliminary response. Like I said, we're not required... Isn't there a risk here of sandbagging that you realize there's a good claim construction or you leave it out of your preliminary response? If you argued in the preliminary response, then maybe institution would be denied and there would be no estoppel. But if you hold back on the argument and wait to make it until the response, then you get the estoppel. Isn't there a risk of that? Certainly, Your Honor, there's a risk of that. But there's also a risk of what happened here, right? And you could look at it from the other lens also. The petitioner here... And again, the board goes back to Judge Lurie. Your question, this is an abuse of discretion issue. The board looked at all of this and they found, right, what happened here was they said in their petition the specification doesn't disclose these two inputs. In their reply, they come back and say, no, no, no, we are wrong. The specification does disclose these two inputs. They're expert on reply. So you didn't have an opportunity to address it in the response, and you did address it in the response. You addressed that under your... You addressed your claim construction and you addressed under your claim construction that it was non-obvious. So it's not as though you were deprived of the opportunity to make the point, and you did make the point. So I think here's the issue. Your Honor, going back to the prejudice issue, right? So what happened here was we came in, we said the plain meaning of the claim requires that you give way to both of the variant limitations, right? And then we said under that plain meaning, the references don't disclose, right? They don't render the claims anticipated or obvious, right? And then what happened was on reply, they come in with, again, a new declaration, and I heard them say, well, we didn't change positions. They did change positions. In the blue brief 19, they said Exotics disclosed the technical basis for its contentions as soon as it became aware of the dispute. So they did make new arguments on reply, and again, under this court's case law, for example, look at Ariosa. Those were meaningfully new contentions, and here's the sandbagging to the patent owner, what happens in that situation. In our cert apply, Your Honor, we're not entitled to submit new evidence. In our cert apply, when they come in in a reply and put forward new positions on prior art that are meaningfully distinct, as the patent owner, Medtronic had no option to come in with a reply declaration to explain why they were wrong substantively. And I think it goes back to the fundamental premise of trials, right? IPR is a special mechanism. It's not a district court proceeding, and here I think really what happened is, and I think we should look at the board's decision, because I think it is key what the board did here, because Judge Dyke, I think all of those thoughts were going in the board's mind that you were kind of bringing out, and if you look at appendix 35 to 36, I think it is key what the board did. This is what the board said. In considering whether a petitioner could have presented its arguments earlier in the petition, we find that petitioner chose to interpret the claims as requiring only a single input, going so far as to affirmatively assert in the petition that the specification of the 758 patent does not describe the two separate measurements. As discussed above, petitioner, in its reply, abandons that argument, conceding instead that petitioner does not dispute that there are embodiments in the 758 patent where power output would vary based on two different values associated with the current passing through the internal power source. Mr. Modi, can I ask a procedural question and then I guess more of a legal question? Just remind me, and I apologize for not recalling. Did you ask the board to allow you, after the other side's reply, a larger-than-normal opportunity to submit responses materials, whether in the sur-repli or I don't care, I think, about the specific form. If you thought that there was new, as there was new factual material attached to the other side's reply that you wanted an opportunity to respond to, did you ask for the opportunity to submit new evidence that might, under ordinary circumstances, not be permitted in the sur-repli? Your Honor, the way this was raised is that we told the board that those arguments should be stricken and we made an argument in our sur-repli that should the board, this is highly prejudicial to us, because the record would need to be reopened, and I think, Judge Toronto, if you go to footnote 37, or footnote 7 on appendix 37, that perhaps answers the question you were getting at, because the board did recognize the prejudice resulting to the patent owner in this situation, and Judge Dyke, I think this gets to your question also in terms of the prejudice. And this is what the board said, in that footnote on page 37. It said, Moreover, we agree with patent owner that it would be prejudicial to patent owner to be required to refute what amounts to a new ground of unpatentability, not raising the petition, but instead... I'm sorry, and I apologize. Some of this may just be because I have a hard time hearing you. So my simple question is this. In your sur-repli, I trust you did say, we shouldn't have to respond because it was completely inappropriate what the reply filing did, and they shouldn't get to do that, and please exclude that, or don't pay any attention to it. Did you also say, if your board, you have a different view, please give us an opportunity to submit more of our own material on this new matter? So, Your Honor, I believe, and I was trying to find a citation for the sur-repli. I believe what we said, we indirectly asked for it. I'm not sure we directly asked for it. But I think the board recognized this issue at Appendix 37 in the footnote, saying what would have to happen in this instance, right? It would be only fair in that instance that the record would need to be reopened, Judge Teich, to give the... And do we happen to know, does the board have a rigid, uniform policy that says sur-repli can never, under any circumstances, even if needed for obvious fairness purposes, get accompanied, be accompanied by new factual material? So, Your Honor, under Rule 42... Sorry, I apologize, Your Honor. Go ahead. So, Your Honor, to answer your question, if you look at Rule 42.23, it says that sur-replis cannot be accompanied by evidence, and I've been involved... I just can't, I'm sorry, I just can't hear what you're saying. Can you hear me okay, Your Honor? No, no, I can't. Okay. So, if you look at Rule 42.23, it states that sur-replis cannot be accompanied by new evidence, and under the board's practice, I've been involved in hundreds of these cases. I can't think of one instance where we would have asked, or the board allowed, for new evidence. Certainly in this instance, if this court feels... I'm putting my microphone up here. Does that make it easier to hear? Judge Strano, can you hear me? Only so faintly that I'm going to have to listen to this on tape. I'm sorry. I apologize, Your Honor. I can try to speak louder. I don't know if this helps. But what I was getting at is, under Rule 42.23, the rules provide that sur-replis cannot be accompanied by new evidence, and I've been involved in hundreds... But I thought that as a general matter, the board has the authority to grant exceptions to such rules, and does so, obviously not frequently, but as needed on a recurring basis. Is that wrong? So, Your Honor, I can't think of a single case, and I've been involved in hundreds of these cases where the board did that, because at some point, the trial has to come to an end. And what I was getting at, at the end of the day here, if this court feels that the board erred and they should look at the reply and the evidence that they put in, the new declaration they put in, then certainly Medtronic should be entitled to put in its own evidence, right? Refuting that, because that came in at the first time their new positions with respect to the prior art came in the first time on reply. But it seems to me that you're conflating two separate issues here. One is whether they could come up with a new declaration on the reply. The other one is whether they could make the arguments from the references in direct response to what you said. And it seems to me that putting to one side the new declaration, the board just refused to consider their arguments responsive to exactly what you said in your response. So, Your Honor, a couple of responses to that. I think, again, if this was a case, they certainly got a response to the claim construction arguments we made, right? The only issue is what happens to the new arguments they made with respect to the prior art. Your arguments are not limited to claim construction arguments. You said that under our construction, the facts are there was only a single input in Shulman, for example. And they did not allow them to respond to that argument that you made in the response. So, Your Honor, I understand that that's what the board did here. But, again, remember, with respect to Shulman, what happened was these were anticipatory grounds with respect to Shulman. So, we came in, we said, look, this is what they pointed to in their petition. And if you look at what they pointed to in the petition, Shulman doesn't meet those limitations. Certainly, they could have come back, and they did. And we didn't object to the argument that they responded to our claim construction arguments. I think the issue here is, again, this is based on the plain language of the claims. Their expert, even in his reply declaration, the new reply declaration they put in, he said that he still disagreed with the claim construction. And I think, ultimately, if you again go back to Appendix 36 to 37 of the board's decision, the board was very bothered by it. And this is precisely why the board did not abuse its discretion. In these types of cases, this court should allow the board to exercise its judgment, which it rightly did in this case. And, again, Judge Toronto, I didn't get to finish this thought on page 37 in footnote 7. This is what the board said. Moreover, we agree with Pat, Your Honor, that it would be prejudicial to Pat, Your Honor, to be required to refute what amounts to a new ground of unpatentability not raised in the petition, but instead asserted for the first time by petitioner in this reply, thus reaching the merits of the new arguments raised. You already addressed it. You already addressed it in the response. It's not unfair. You already had your chance. You came up with a new claim construction and you argued that under that claim construction it was non-obvious. And to a significant extent, they were simply responding to the argument that you raised. Your Honor, I understand. Again, I respectfully disagree because this was a plain meaning construction that they should have anticipated. They agreed. The board noted that they misapprehended the specification. So, and I'll just note to just get the site in. It's appendix 995 to 996 where we said that we would have submitted evidence if we were allowed to do so. Just going back to Judge Toronto's question. Counsel, your time has expired. Mr. Nathan has some rebuttals on. Thank you, Your Honor. And might I suggest for better audibility for Judge Toronto that all speakers speak slowly and distinctly. Yes, Your Honor. With the court's permission, Judge Toronto, are you able to hear me at this time? Yes. Thank you, Your Honor. I'll just make a few very brief points. And I'll begin, if I may, with Judge Toronto's questions about the whether Medtronic sought leave to supplement the factual record. In footnote 7 on appendix 37, which is the page and footnote that Medtronic's counsel was just referencing, right in the middle of that footnote, the board wrote, and I quote, to be clear, patent owner did not seek leave to submit additional expert testimony. That is the board asserting that they were not asked for such permission. Now, counsel began his argument with the notion, and it is their major focus in argument, that we made this deliberate choice, that Axonix made a deliberate choice not to address a claim construction that no one proposed. There is no obligation in the board's rules, in the regulations, there is no obligation whatsoever for the petitioner to anticipate claim constructions that the other party is going to propose or that the board might adopt sua sponte. The only obligation is to assert, do we think these claims need to be construed? Yes or no? We picked no. If they do need to be construed, what construction? That's exactly what we did. There were two separate where-in clauses. That's correct, Your Honor. There were two separate where-in clauses. We took the position that neither of them needed to be construed. They agreed with us. So did the board. We sought institution based on the assertion that the same thing in each prior art ground met both limitations. They saw it. They assumed it, too. They contradicted it, but not for that reason. They didn't fight it, as Judge Dyke pointed out. Now, the board instituted on that factual showing, on that theory. Only afterward was any construction proposed whatsoever. There is no plausible way to suggest that we were unreasonable in not proposing to construe those terms or that we were unreasonable in using the same evidence to meet both of them. When we did it, they saw it and didn't address it. The board accepted it and said it was good enough for institution. Now we're instituted, and if they're right, we never get to address whether the references that were in our grounds have the limitations as later construed, but not construed that way for institution purposes. Now, Apple expressly rejects the idea that we have such an obligation. Because in Apple, it was asserted that, and I'll just quote this, Andrea contends that the board correctly precluded Apple's arguments applying the Martin algorithm with multiple sub-windows because Apple's 626 IPR petition was quote-unquote intentionally premised on a scenario in which there were no sub-windows. This court said, we disagree. And went on, it is unreasonable, I'm quoting again from Apple, it is unreasonable to hold petitioners to such a high standard that if they choose to rely on one example of an algorithm, they must either discuss all possible permutations of the variables or risk waiving the opportunity to further discuss other relevant examples in their reply. Apple takes on this notion that the petition was intentionally limited to only the constructions that the petitioner actually believed in and that this therefore justifies denying substantive reply. Apple took that argument on expressly and rejected it hard. That's their argument. I respectfully submit we are within Apple, we are within Erickson, we had a right to reply, it was a legal right, and we were denied it by the board. Thank you, Your Honors. Thank you, Counsel. The case is submitted.